IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| ACQIS LLC,<br>　　　　*Plaintiff*<br><br>-vs-<br><br>MITAC COMPUTING TECHNOLOGY<br>CORPORATION,<br>　　　　*Defendant* | §<br>§<br>§<br>§　　W-20-CV-00962-ADA<br>§<br>§<br>§<br>§<br>§ |

## ORDER DENYING DEFENDANT'S MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA

Before the Court is Defendant MiTAC Computing Technology Corporation's ("MiTAC") Motion to Transfer Venue under 28 U.S.C. § 1404(a) to the Northern District of California. ECF No. 32. Plaintiff ACQIS LLC ("ACQIS") filed its Response (ECF No. 34), and MiTAC filed its Reply (ECF No. 35). After considering the parties' briefs and the relevant law, the Court **DENIES** MiTAC's Motion to Transfer for the reasons set out below.

### I. FACTUAL BACKGROUND

Plaintiff ACQIS filed this lawsuit accusing MiTAC of infringing U.S. Patent Nos. 9,529,768 ("'768 patent"), 9,703,750 ("'750 patent"), 8,977,797 ("'797 patent"), 8,756,359 ("'359 patent"); RE44,654 ("'654 patent"); RE44,739 ("'739 patent"); RE43,602 ("'602 patent"); RE42,984 ("'984 patent"), 8,626,977 ("'977 patent"); RE45,140 ("'140 patent"), and 9,529,769 ("'769 patent") (collectively, the "ACQIS Patents"). ACQIS also filed four related lawsuits against Lenovo Group Ltd. et al, WIWYNN Corporation, ASUSTeK Computer, Inc., and Inventec Corporation[1] in this District.

---

[1] *ACQIS LLC v. Lenovo Group Ltd. et al.*, 6-20-cv-00967-ADA, involving nine patents asserted against MiTAC; *ACQIS LLC v. Wistron Corporation et al.*, 6-20-cv-00968-ADA involving four patents asserted against MiTAC;

1

Plaintiff ACQIS is a limited liability company organized and existing under the laws of the State of Texas, with an office in the Northern District of Texas. ECF No. 1 ¶ 5. A related entity, ACQIS Technology, Inc., is organized under the laws of the state of Delaware with its principal place of business in Mountain View, California. ACQIS is operated from California by its CEO, Dr. William Chu. *Id.*

Defendant MiTAC is a Taiwanese corporation with its headquarters in Taiwan. ECF No. 1 ¶ 6; ECF No. 23 ¶ 6. MiTAC also has U.S. subsidiaries located in Newark, California. ECF No. 32 at 1.

## II. LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *Id.* "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under Section 1404(a) is whether a civil action "might have been brought" in the transfer destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (hereinafter "*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S.*

---

*ACQIS LLC v. ASUSTeK Computer Inc.*, 6-20-cv-00966-ADA, involving nine patents asserted against MiTAC;
*ACQIS LLC v. Inventec Corporation*, 6-20-cv-00965-ADA, involving eight patents asserted against MiTAC.

*Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *In re Vistaprint Ltd.,* 628 F.3d 1342, 1346 (Fed. Cir. 2010). The burden that a movant must carry is not that the alternative venue is more convenient, but that it is clearly more convenient. *Volkswagen II*, 545 F.3d at 314 n.10. Although the plaintiff's choice of forum is not a separate factor entitled to special weight, respect for the plaintiff's choice of forum is encompassed in the movant's elevated burden to "clearly demonstrate" that the proposed transferee forum is "clearly more convenient" than the forum in which the case was filed. *In re Vistaprint Ltd.,* 628 F.3d at 314–15. While "clearly more convenient" is not necessarily equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest*

*NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

## III. DISCUSSION

The threshold determination in the § 1404(a) analysis is whether this case could initially have been brought in the destination venue—the Northern District of California ("NDCA"). Neither party contests that venue is proper in the NDCA and that this case could have been brought there. This Court finds that venue would have been proper in the NDCA had it been originally filed there. Thus, the Court proceeds with its analysis of the private and public interest factors to determine if the NDCA is clearly more convenient than the Western District of Texas ("WDTX").

### A. The Private Interest Factors

#### *i. The Relative Ease of Access to Sources of Proof*

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)).

MiTAC states that all relevant documents relating to the Accused Products are located either in its offices in Taiwan or China, or its U.S. subsidiaries' offices located in Newark,

California. ECF No. 32 at 6. MiTAC further states it maintains no relevant documents or presence in the WDTX.

ACQIS argues that MiTAC fails to meet its burden by simply pointing to the possibility that relevant documents might exist in a subsidiary's office in the NDCA. Furthermore, ACQIS posits that all its documents are held in its Texas office or are equally available electronically in either District. ECF No. 34 at 8–9. Dr. Chu, the President and CEO of ACQIS, declared several physical documents exist in ACQIS's Texas office and are relevant to the development of serial PCI interface controller (HIC—Host Interface Controller, PIC—Peripheral Interface Controller). ECF No. 34-1 ¶ 6.

Although the physical location of electronic documents does affect the outcome of this factor under current Fifth Circuit precedent (*see Volkswagen II*, 545 F.3d at 316), this Court has stressed that the focus on physical location of electronic documents is out of touch with modern patent litigation. *Fintiv*, 2019 WL 4743678, at *8; *Uniloc 2017 LLC v. Apple Inc.,* 6-19-CV-00532-ADA, 2020 WL 3415880, at *9 (W.D. Tex. June 22, 2020) ("[A]ll (or nearly all) produced documents exist as electronic documents on a party's server. Then, with a click of a mouse or a few keystrokes, the party [can] produce[] these documents" and make them available at almost any location). Other courts in the Fifth Circuit similarly found that access to documents that are available electronically provides little benefit in determining whether a particular venue is more convenient than another. *See Uniloc USA Inc. v. Samsung Elecs. Am.*, No. 2:16-cv-642-JRG, 2017 U.S. Dist. LEXIS 229560, at *17 (E.D. Tex. Apr. 19, 2017) ("Despite the absence of newer cases acknowledging that in today's digital world computer stored documents are readily moveable to almost anywhere at the click of a mouse, the Court finds it odd to ignore this reality

in favor of a fictional analysis that has more to do with early Xerox machines than modern server forms.").

ACQIS fails to identify any relevant documents that are in the WDTX. Documents held in the Northern District of Texas do not weigh against transfer as they are outside both the current and proposed transferee forum. *See In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014). Accordingly, the only remaining documents for reference are those potentially held by MiTAC's subsidiaries in the NDCA. Mr. Hwang, Vice President of MiTAC, declared that any relevant documents concerning the Accused Products are in Taiwan or China, or in its U.S. subsidiaries' offices in the NDCA. It appears that these generically referenced documents are primarily in Taiwan or China, and secondarily or duplicatively in California (if at all). Separately, Mr. Hwang admits that "[t]he majority of MiTAC's documents and financial records concerning the Accused Products' sale, offer for sale, marketing, and finance are located in Taiwan." ECF No. 32-2 ¶ 13. Clearly, relevant documents exist in Taiwan, China, and Texas. What is less clear is what documents are held in California, presumably by subsidiaries, that are not held by MiTAC in Taiwan and China. Furthermore, none of the referenced documents appear to be in physical form only. Nonetheless, "while electronic storage of documents makes them more widely accessible than was true in the past, the fact that documents can often be accessed remotely does not render the sources-of-proof factor irrelevant." *In re Google, LLC*, No. 2021-171, slip op. at 15 (Oct. 6, 2021). Therefore, the Court finds that this factor weighs only slightly in favor of transfer.

### *ii. The Availability of Compulsory Process to Secure the Attendance of Witnesses*

For this factor, the Court considers particularly non-party witnesses whose attendance may need to be secured by a court order. *Fintiv*, 2019 WL 4743678, at *5 (citing *Volkswagen II*,

545 F.3d at 316); *Uniloc,* 2020 WL 3415880, at *10. This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.*, 581 F. App'x. 886, 889 (Fed. Cir. 2014). Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015).

MiTAC argues that because its subsidiaries' offices are in Newark, California, any relevant employees are subject to the NDCA's subpoena power. ECF No. 32 at 7. MiTAC's referenced group of witnesses allegedly serve as an intermediary for MiTAC's activities in the United States. MiTAC also asserts that Dr. Chu is subject to the compulsory power of the NDCA. ACQIS rebuts by arguing that MiTAC has failed to meet its burden because vague assertions that unnamed non-party employees may be relevant should be afforded little weight. ACQIS further argues that the one cherry-picked witness, Yen-wen ("Danny") Hsu, cannot support MiTAC's motion to transfer. ECF No. 34 at 9. Last, ACQIS states that Dr. Chu, the President and CEO of ACQIS, is neither unwilling nor inconvenienced by attendance at trial in the WDTX. ECF No. 34 at 12. Neither ACQIS nor MiTAC identify any witnesses subject to the subpoena of the WDTX.

The Court respects a party's ability to determine what is convenient and inconvenient for itself, particularly a plaintiff that filed the case. MiTAC highlights four witnesses by name and references employees of MiTAC subsidiaries located in the NDCA. To avoid double-dipping in

the factor analysis, this Court will assume that the referenced non-party employees are unwilling and need to be addressed under the compulsory process factor. The four named witnesses will be addressed under the forthcoming willing witness factor. Regardless, the outcome remains unchanged.

This Court considers particularly non-party witnesses who will need to be subpoenaed to testify. The Court is not convinced that any testimony from the subsidiary employees would not be duplicative of testimony garnered from the named witnesses or expert witnesses at trial. Unlike the "relevant knowledge" descriptions given in Mr. Hwang's declaration, MiTAC's reference to the non-party employees—that the employees serve as intermediaries—is a simple bite at venue without teeth. The Court is unpersuaded as to the relevance and necessity of this group of witnesses at trial and therefore gives these witnesses little weight. At most, this factor weighs slightly in favor of transfer.

### *iii. The Cost of Attendance and Convenience for Willing Witnesses*

The most important factor in the transfer analysis is the convenience of the witnesses. *In re Genentech, Inc.*, 566 F.3d at 1342. "When the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor or inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *Volkswagen II*, 545 F.3d at 317 (quoting *Volkswagen I*, 371 F.3d at 203). "[T]he inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, slip op. at 9 (Sept. 27, 2021). The Federal Circuit has indicated that time is a more important metric than distance. *Id.* When considering this factor, the Court should

consider all potential material and relevant witnesses. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017).

MiTAC argues that three of its witnesses reside in Taiwan which is closer to the NDCA. MiTAC also selects one employee, Mr. Hsu, who is located in the NDCA and has relevant knowledge regarding sales and marketing of server products. ECF No. 32-2 ¶ 10. Last, MiTAC argues Dr. Chu's residence in the NDCA carries weight.

ACQIS disposes of MiTAC's argument regarding Dr. Chu by stating that he is not inconvenienced by attendance at trial in the WDTX. ECF No. 34 at 12. ACQIS also disputes MiTAC's characterization of international travel analysis from *In re Nintendo* and highlights MiTAC's failure to declare that it intends to call Mr. Hsu at trial.

As stated previously, the Court takes Dr. Chu at his word and accepts his claim as to what is and is not convenient to him. Similarly, the Court is unwilling to require parties to assert that named witnesses in venue analysis briefs will be called at trial. The specificity provided by MiTAC regarding its named witnesses with relevant knowledge is sufficiently helpful in analysis such as this. While the Court may conservatively speculate regarding long lists of witnesses, the provided list was relevant and concise. MiTAC named one witness that resides in the NDCA, but neither party named a witness that resides in the WDTX.

Regarding the witnesses that reside in Taiwan, the Fifth Circuit's 100-mile rule is controlling:

> When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.

9

> Furthermore, the task of scheduling fact witnesses so as to minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour.

*Volkswagen I*, 371 F.3d at 204–05.

The Federal Circuit has provided some clarification to the rule articulated in *Volkswagen I and II*. In *In re Genetech*, the circuit stated "the '100-mile' rule should not be rigidly applied" and that "witnesses from Europe [would] be required to travel a significant distance no matter where they testify" when comparing travel to the NDCA and Eastern District of Texas. 566 F.3d 1338, 1344 (Fed. Cir. 2009). In *In re Nintendo*, the circuit found that four Japanese witnesses would need to travel an additional 1,756 miles or 7 hours by plane to Texas compared to Washington, and that with four witnesses residing in Washington and none in Texas, transfer was proper. 589 F.3d 1194, 1199. Finally, the Federal Circuit provided the following analysis regarding witnesses located in New York that would need to travel to either the WDTX or NDCA:

> Although it might be true that these individuals will need to travel a greater distance to reach NDCA than WDTX, and although a flight from New York to WDTX might take a bit less time than from New York to NDCA, in either instance these individuals will likely have to leave home for an extended period of time and incur travel, lodging, and related costs. As expressed in Genentech, the 100-mile rule should not be rigidly applied where witnesses will be required to travel a significant distance no matter where they testify. These witnesses will only be slightly more inconvenienced by having to travel to California than to Texas.

*In re Apple Inc.*, 979 F.3d at 1342 (internal quotations and citations omitted). Just as the circuit found that New York to the NDCA was only slightly more inconvenient than New York

10

to the WDTX, this Court proportionally finds that Taiwan to the NDCA is only slightly more convenient than Taiwan to the WDTX.

Because MiTAC names a single employee in the NDCA and three international employees that are slightly inconvenienced by the WDTX when compared to the NDCA, the Court finds that this factor weighs in favor of transfer. Furthermore, should all the subsidiary employees be willing witnesses analyzed under this factor, the Court would find this factor strongly weighs in favor of transfer, but would neutralize the compulsory witness factor. Accordingly, whether the witnesses are analyzed under the willing witness or compulsory witness factor does not change the ultimate outcome this Court reaches when exercising its discretion in analyzing weight given to each convenience factor.

### *iv. All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive*

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). "[W]here there is a co-pending litigation . . . involving the same patent-in-suit, . . . . pertaining to the same underlying technology and accusing similar services, . . . the Federal Circuit cannot say the trial court clearly abuses its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d at 1346 n.3.

MiTAC recognizes co-pending litigation in this district but argues that the co-pending cases are similarly in preliminary stages and should not weigh against transfer. ECF No. 35 at 4. MiTAC's argument is not that this factor favors transfer, but that this factor is insufficient to

11

prevent transfer. ACQIS adamantly disagrees and proposes this factor weighs strongly against transfer. ACQIS highlights the four other pending cases in this District and states that judicial economy will be served by having this Court try cases that involve the same patents. ECF No. 34 at 3. ACQIS further states that the existence of multiple lawsuits involving the same issues is a "***paramount consideration***" in transfer analysis. *Id.* at 4.

There is a significant degree of commonality within the co-pending cases, including four to nine overlapping patents between each co-pending case. ECF No. 34 at 5. Accordingly, judicial economy is best served by denial of transfer. *See In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("In this case, the existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice."); *see also In re Google Inc.*, 412 Fed. Appx. 295, 296 (Fed. Cir. 2011) ("Courts have consistently held that judicial economy plays a paramount role in trying to maintain an orderly, effective, administration of justice and having one trial court decide all of these claims clearly furthers that objective."). Furthermore, unlike in *NetScout*, ACQIS has not engaged in venue manipulation to tip the scales in favor of retaining the case in this District. *See In re NetScout Systems, Inc.*, No. 2021-173, slip op. at 9–10 (Fed. Cir. Oct. 13, 2021) (finding plaintiff could not defeat transfer by filing other infringement actions in the transferor forum after defendant's transfer motion was filed). Here, ACQIS filed the four co-pending cases *on the same day* it filed its Complaint in the instant case. Such action cannot be considered venue manipulation without effectively reducing the value of this factor to nil. The Court finds that the co-pending cases and overlapping patents in suit weighs strongly against transfer.

**B. The Public Interest Factors**

>    *i. Administrative Difficulties Flowing from Court Congestion*

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73 (1963); *Parkervision, Inc. v. Intel Corp.*, No. 6:20-CV-00108, 2021 WL 401989, at *6 (W.D. Tex. Jan. 26, 2021). This factor considers "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d at 1347. Additionally, court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *Id.*

MiTAC argues that 275 patent cases are pending across the entire NDCA, while 701 cases are pending before this Court. ECF No. 32 at 9. ACQIS argues that the Court's default schedule will lead to a faster trial date than would be available in the NDCA. ECF No. 34 at 13. MiTAC's argument hinges on the number of cases on each court's docket, while ACQIS relies on the Court's default schedule to reflect speed to trial. Both parties' arguments are misplaced.

Although MiTAC is correct that this district has more cases, it ignores this Court's ability to get those cases to trial quickly. This Court's Order Governing Proceedings—Patent Case ("OGP") sets patent cases for trial at 52 weeks after *Markman* hearings. Despite the large number of cases pending before this Court, the Court has been able to bring patent cases to trial approximately in accordance with its guidance in the OGP. *See, e.g., Profectus Tech. LLC v. Google LLC*, No. 6-20-cv-00101 (W.D. Tex., filed Feb. 10, 2020) (19.7 months from case filing to trial); *CloudofChange, LLC v. NCR Corporation*, No. 6-19-cv-00513 (W.D. Tex., filed Aug. 30, 2019) (20.3 months from case filing to trial); *VLSI Technology LLC v. Intel Corporation*, No.

6-21-cv-00057 (W.D. Tex., filed Apr. 11, 2019) (22.4 months from case filing to trial); *Freshub, Inc. et al v. Amazon.Com Inc. et al*, No. 6-21-cv-00511 (W.D. Tex., filed Jun. 24, 2019) (23.7 months from case filing to trial); *ESW Holdings, Inc. v. Roku, Inc.* No. 6-19-cv-00044 (W.D. Tex., filed Feb. 8, 2019) (25.9 months from case filing to trial).

The crux of this factor is neither the number of cases on the docket nor the scheduling order, but "the speed with which a case can come to trial and be resolved…". *In re Genentech, Inc.*, 566 F.3d at 1347 (citing *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984) ("[T]he real issue is not whether [transfer] will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket.")). The Federal Circuit, citing *Samsung* and *Apple*, recently stated that the WDTX and NDCA "show no significant differences in caseload or time-to-trial statistics." *In re Juniper Networks, Inc.*, No. 2021-160, 2021 WL 4343309, at *6 (Fed. Cir. Sept. 24, 2021). But in *Samsung*, this Court erred for putting too much weight into the judicial economy factors because only two patents overlapped and the incremental gains in retaining the cases were insufficient to outweigh all other factors that favored transfer. *In re Samsung Electronics Co., Ltd.*, 2 F.4th 1371, 1379–80 (Fed. Cir. June 30, 2021). That is not the case here. This case involves between four and nine patents overlapping with four other co-pending cases. Furthermore, only three other factors favor transfer, two of which only slightly so. *Apple* similarly found error for reliance on a scheduled trial date in assessing this factor. *In re Apple Inc.*, 979 F.3d at 1344. At the time, this Court lacked sufficient data to indicate that the trial times would indeed occur as planned. However, as noted above, this Court now has sufficient data indicating its ability to effectively manage its docket and achieve faster trials. On average, patent cases in this Court reach trial in under two years, whereas it takes over three years in the NDCA.

However, considering the speculative nature of assessing this case's speed to trial, the Court finds this factor to weigh only slightly against transfer.

### ii. Local Interest in Having Localized Interests Decided at Home

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). As the Federal Circuit has instructed, the focus is on where the events forming the basis for infringement occurred, and not the parties' generalized connections to the forum. *In re Juniper Networks, Inc.*, No. 2021-160, slip op. at 9–10 (Fed. Cir. Sept. 27, 2021).

MiTAC argues that California has a stronger localized interest in the NDCA because ACQIS and MiTAC's subsidiaries maintain offices in California. ECF No. 32 at 9–10. ACQIS contends that although ACQIS has an office and principal residing in California, it was organized and exists under the laws of the State of Texas. ECF No. 34 at 14. Furthermore, ACQIS argues that MiTAC has committed acts of infringement in this District, including through activities of a MiTAC subsidiary in Austin, Texas. *Id.*

To determine which district has the stronger local interest, the Court looks to where the events forming the basis for infringement occurred. *See In re Juniper Networks, Inc.*, No. 2021-160, slip op. at 9–10 (Fed. Cir. Sept. 27, 2021). The most relevant considerations are therefore where the design, development, and sale of the accused products occurred. MiTAC admits that "[a]lmost all of MiTAC's activities related to the Accused Products occur outside the United States, primarily in Taiwan or China." ECF No. 32 at 10. MiTAC has failed to show how any events forming the basis for infringement occurred in the NDCA. And, as both parties agree, the

Accused Products are offered for sale and sold throughout the United States. *See In re Nintendo*, 589 F.3d at 1198 (finding the citizens of the transferor venue had "no more or less of a meaningful connection to the case than any other venue" because the products were "sold throughout the United States").

None of the events giving rise to the infringement claim occurred in the NDCA, and MiTAC's generalized presence via its subsidiaries in that district is insufficient. Because the Accused Products were sold throughout the United States, neither venue has a particularly localized interest. The Court finds this factor to be neutral.

### *iii. Familiarity of the Forum with the Law That will Govern the Case*

Both parties agree that this factor is neutral. The Court agrees.

### *iv. Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law*

Both parties agree that this factor is neutral. The Court agrees.

## IV. CONCLUSION

Having considered the private and public interest factors, the Court's conclusions for each factor are summarized in the following table:

| Factor | The Court's Finding |
|---|---|
| Relative ease of access to sources of proof | Slightly in favor of transfer |
| Availability of compulsory process to secure the attendance of witnesses | Slightly in favor of transfer |
| Cost of attendance for willing witnesses | In favor of transfer |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Strongly against transfer |
| Administrative difficulties flowing from court congestion | Slightly against transfer |
| Local interest | Neutral |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

Three of the eight factors are neutral. Two factors, practical problems and administrative difficulties, disfavor transfer. Although three factors favor transfer to the NDCA, this Court has indicated two are slight at best. A simple three factors in favor versus two factors against is insufficient to justify a transfer under § 1404. Rather, as the Fifth Circuit has instructed, the moving party must show that transfer is *clearly* more convenient than the venue chosen by the plaintiff. With only three factors favoring transfer, MiTAC has failed to prove that the Northern District of California is a clearly more convenient venue than the Western District of Texas.

Finally, the Court finds its analysis to be like that of the Eastern District of Texas in *Vistaprint*. In *In re Vistaprint Ltd.*, the court weighed considerations of convenience in favor of transfer, but ultimately concluded that such considerations did not outweigh judicial economy. 628 F.3d at 1344. While this Court may not have prior litigation experience regarding the patents in suit, it is rapidly becoming familiar with the multitude of patents that are also present in four

17

co-pending cases. As stated by the Federal Circuit, "[a]t the end of the day, § 1404(a) balances a number of case-specific factors, not just convenience." *Id.* at 1346. What is strikingly similar to *Vistaprint*, is that no defendant party is actually located in the NDCA. Like *Vistaprint*, this case involves a foreign corporation with subsidiaries in the transferee venue. *See id.* at 1343. And, despite the transferee venue's proximity to sources of proof and subsidiary employee witness residences, the Federal Circuit denied Vistaprint's writ of mandamus. *See id.* at 1346–47 ("In addition, although some potential witnesses and sources of proof located in the transferee venue warrant weighing convenience factors in favor of transfer, no defendant party is actually located in the transferee venue and the presence of the witnesses in that location is not overwhelming."). Each case turns on its facts and offers a reasonable range of choice. *Id.* at 1347. Defendant's Motion is therefore **DENIED**.

SIGNED this 14th day of October, 2021.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE